# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

TROY NORTON, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

CENTRAL CREDIT SERVICES, LLC,

        Defendant.

Case No.: 19-cv-880

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Central Credit Services LLC ("CCS") is a foreign limited liability company with its principal place of business located at 9550 Regency Square Blvd, Suite 500, Jacksonville, Florida 32225.

6. CCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. CCS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. CCS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about June 14, 2018, CCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "First Premier Bank." A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt that CCS was attempting to collect was incurred by use of a credit card, used exclusively for the purchase of personal, family, or household items.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication that Defendant sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

14. Exhibit A includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

2

15. Upon information and belief, if Exhibit A was actually mailed on June 14, 2018, it would have been received on or after June 16, 2018.

16. If Exhibit A was received on June 16, 2018, the consumer would have until July 16, 2018 to mail out a request for validation. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

17. Exhibit A also contains the following settlement offers:

> Your Account(s) has been sent to us for collection. If you are unable to remit the total balance for the Account(s), we have two payment options available for you, we are not obligated to renew these offers.
>
> Option 1: Split the total balance into 3 installments over 3 consecutive months to pay in full. To fulfill this option make the following payments: month 1 $174.74; month 2 $174.74; month 3 $174.76. Your first payment is due in our office within 45 days from the date of this letter. Remaining payments are due every 30 days thereafter until paid in full. Should you fail to complete the arrangement proposed under this option any payments made will be applied to the balance due shown above.
>
> Option 2: Reduced Payment Option. Pay a onetime payment of $419.39 to resolve the above Account(s) for less than the total balance. Provided the payment made is not reversed or otherwise returned as unpaid, no further attempts will be made to collect the remaining balance. Your payment is due in our office within 45 days from the date of this letter.

18. Both of the above offers require that a payment be received by July 31, 2018.

19. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading where such offer is available at any time.

20. Such statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

21. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word

3

> "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

22. Although <u>Exhibit A</u> includes the safe harbor language prescribed by *Evory*, such safe harbor language is overshadowed by the letter's statement that "payment is due in our office within 45 days from the date of this letter."

23. The implication of the safe harbor language, understood in the context of the letter, is that the "renewal possibility" only exists if the consumer accepts the offer but the payment does not clear. *See, e.g., Al v. Van Ru Credit Corp.*, No. 17-cv-1738, 2018 U.S. Dist. LEXIS 70321, at *9-10 (E.D. Wis. Apr. 26, 2018) ("How the safe-harbor language would affect an unsophisticated consumer is a fact-specific question not amenable to resolution on a motion to dismiss."); *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 834 (D.N.J. 2018) ("courts have found that if a collection letter contains the language, 'we are not obligated to renew this offer,' it does not violate the FDCPA, so long as the rest of the language in the collection letter does not contradict that safe harbor language.").

24. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion. *See Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed …"); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor for debt collectors who want to avoid liability for the kind of suit Bartlett has brought and

4

now won. The qualification "for the kind of suit that Bartlett has brought and now won" is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

25. Reading the letter as a whole, the unsophisticated would understand the settlement offer included in Exhibit A had a deadline of July 31, 2018. In the context of the letter, the unsophisticated consumer would not understand the phrase "we are not obligated to renew this offer" to mean that "renewal [of the settlement offer is a] possibility but that it is not assured." *See Evory*, 505 F.3d at 775-76.

26. Upon information and belief, the deadline in Exhibit A to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

27. Upon information and belief, CCS had authority from the creditor to settle Plaintiff's account for the amounts offered by Exhibit A, or less, at any time.

28. Exhibit A thus overshadows and contradicts the statement that "we are not obligated to renew these offers" by including it after the instruction that "payment is due in our office within 45 days from the date of this letter."

29. Furthermore, a consumer, unsure whether the offers would still be available after the July 31, 2018 deadline, would feel compelled to allow for an extra two or three days for mailing and processing to ensure they were able to take advantage of the settlement offers in Exhibit A and that the payment would not be processed as a partial payment on the full balance.

5

30. The 30-day validation period identified in Exhibit A would end at or around the same time the consumer would feel compelled to mail out a payment to take advantage of the settlement offer in Exhibit A before it expires. *See* 15 U.S.C. § 1692g(a).

31. Assuming the consumer sought verification at or near the end of the statutorily mandated 30-day validation period, there would be no way for CCS to provide verification in time for the consumer to tender payment in acceptance.

32. The unsophisticated consumer, realizing that the debt could not be verified before the settlement offer in Exhibit A expired and that CCS was not obligated to renew the offer would be unsure how, or whether, they could seek verification of the debt but accept the settlement offer if the debt could be verified.

33. The settlement offer in Exhibit A is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

34. Exhibit A does not explain how, or even whether, a consumer may request verification of the debt and accept the settlement offer if the debt is verified. *See, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

35. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

6

36. Because the settlement offer in Exhibit A expires at or around the same time as the validation period, there is an apparent contradiction between the settlement offer and the validation notice. *See Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. 2008) ("The extended time for taking advantage of the settlement offer – couched within a personalized assurance that all her rights will be preserved through oral communication – effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights.").

37. In the context of an initial settlement letter, the unsophisticated consumer would believe that the foregoing of validation rights is a material aspect of the settlement offer and would understand the language that the debt collector is "not obligated to renew" to mean that the debt collector would most likely *not* renew the offer, since the debtor would no longer have validation rights to bargain away. *See, e.g., Glackin v. LTD Fin. Servs., L.P.*, 2013 U.S. Dist. ELXIS 108031, at *7-8 (E.D. Mo. Aug. 1, 2013) ("an unsophisticated consumer would likely believe that setting up payment arrangements *would act as a waiver of the right to dispute the debt*.") (emphasis added).

38. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

39. Alternatively, the unsophisticated consumer, wishing to take advantage of the settlement offer as long as it could be verified, could tender her payment to accept the settlement offer along with the notice of dispute, but even then they would have no way of knowing whether or how she could receive her money back from CCS if it were unable to verify the debt or if the debt actually is not valid.

7

40. In fact, though the unsophisticated consumer would not realize it, the debt collector need not even verify the debt as long as it ceases further attempts to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

41. The plain language of Exhibit A is unclear as to how CCS would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

42. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit A, under the terms of Exhibit A, CCS might:

   a. Hold the payment in escrow pending verification of the debt;

   b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

   c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

43. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

44. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending

8

validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

45. The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

46. The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

47. Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

48. Ultimately, the purpose and effect of providing a settlement offer with a letter containing the validation notice is to discourage the unsophisticated consumer from submitting a written dispute.

49. Moreover, "Option 1" contains the following payment schedule:

> Option 1: Split the total balance into 3 installments over 3 consecutive months to pay in full. To fulfill this option make the following payments: month 1 $174.74; month 2 $174.74; month 3 $174.76. Your first payment is due in our office within 45 days from the date of this letter. Remaining payments are due every 30 days thereafter until paid in full. Should you fail to complete the arrangement proposed under this option any payments made will be applied to the balance due shown above.

50. On the face of <u>Exhibit A</u> it is impossible to determine when the *second and third payments* are due.

51. Exhibit A states that the first payment is due in the office July 31, 2018, and that the second/third payments are due "every 30 days thereafter" but it is unclear whether the second payment is due 30 days after receipt of the first payment or 30 days after July 31, 2018.

52. Plaintiff was misled and confused by Exhibit A.

53. The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

54. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. Debt collection letters containing alleged misrepresentations of the character, amount or legal status of a debt, including misrepresentations of the amount or timing of settlement offers, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will pay the wrong amount, or make a payment toward a debt that is not owed, or even decide to file bankruptcy because the consumer is under the mistaken impression that the debt will increase rather than remain static over time. *See* 15 U.S.C. § 1692e(2)(a); *Boucher*, 880 F.3d at 368; *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim failed on the merits"); *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678,

10

2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (door hangers left at plaintiff's residence caused plaintiffs to call debt collector); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

55. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

56. 15 U.S.C. § 1692e generally prohibits: "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

57. 15 U.S.C. § 1692e(5) specifically prohibits: "the threat to take any action that cannot legally be taken or that is not intended to be taken."

58. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

59. 15 U.S.C. § 1692g(b) states, in relevant part:

> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## **COUNT I – FDCPA**

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61. By including the statement "we are not obligated to renew these offers" before the statements "payment is due in our office within 45 days from the date of this letter," <u>Exhibit A</u>

does not clearly indicate to the consumer that there was a renewal possibility if the consumer did not make a payment on the account prior to the expiration date.

62. The unsophisticated consumer would be confused as to the due date for the second and third payments under the "Option 1."

63. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT II – FDCPA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. By including settlement offers which purportedly expired on or soon after the expiration of the validation period, Exhibit A overshadows the validation notice and is therefore false, deceptive, and misleading as to the consumers right to dispute and/or request verification of their alleged debt.

66. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692g(b).

## CLASS ALLEGATIONS

67. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between June 14, 2019, 2018 and June 14, 2019, inclusive, (e) that was not returned by the postal service.

68. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

69. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(10), and 1692g.

70. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

71. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

72. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

73. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 14, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)

14

jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com